UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Elli LeClair,

        Plaintiff,

vs.

HealthEast Care System,

        Defendant.

Court File No. _____

**COMPLAINT**

---

The above-named Plaintiff, Elli LeClair ("Plaintiff"), for her Complaint against the above-named Defendant, HealthEast Care System ("Defendant"), states and alleges as follows:

## THE PARTIES

1. Plaintiff is a resident of Minnesota, a registered nurse ("RN"), and former employee of Defendant. In 2009, while employed by Defendant, she suffered permanent paralysis of one vocal chord, and she suffered a fractured tibia that necessitated a partial knee replacement.

2. Defendant is a Minnesota non-profit organization that operates four hospitals and thirteen primary and specialty care clinics in and around the Twin Cities. In 2009, Defendant's operating revenue exceeded Eight Hundred Million dollars ($800,000,000.00). At all times material to this Complaint, Defendant has employed at least 15 individuals and regularly transacted business within Minnesota.

## NATURE OF ACTION

3. By this action, Plaintiff seeks to hold Defendant accountable for its unlawful decision to terminate her employment because she was disabled, and for its failure to reasonably accommodate her disability. She asserts claims of disability discrimination under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.*, as amended by the ADA Amendments Act of 2008 ("ADA"), and the Minnesota Human Rights Act, Minn. Stat. § 363A.08, Subd. 2 and Subd. 6 ("MHRA").

## JURISDICTION

4. This Court has original jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331, and it has pendent jurisdiction over her MHRA claims pursuant to 28 U.S.C. § 1367.

## VENUE

5. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) (which provision the ADA incorporates by reference) because all of the alleged unlawful actions of Defendant occurred at its workplace in Minnesota.

## BACKGROUND

6. Plaintiff was an employee of Defendant for more than ten years. In July 1999, she started working for Defendant as an RN. From 2000 to 2007, she was a nursing supervisor of Defendant. In July 2007, she began working in Defendant's education department as an "education and development specialist." She remained in this full-time position until December 31, 2009, at which time Defendant terminated her employment.

7. In August 2009, Plaintiff had knee surgery. Subsequent to the surgery, she had a leg-related disability: she had suffered a fractured tibia, it would not heal properly, and she eventually needed a partial knee replacement. This medical condition impacted her ability to stand and walk, and it required her to use crutches for several months.

8. That same month, Plaintiff also underwent surgery on her neck. Afterwards, she had a voice-related disability: one of her vocal chords was permanently paralyzed. This medical condition impacted her ability to speak loudly, and it required her to seek ongoing treatment, including but not limited to a series of collagen injections in her paralyzed vocal chord.

9. From August 2009 to October 2009, Plaintiff used pre-approved FMLA leave. Then, with Defendant's consent and approval she used extended medical leave.

10. Throughout her extended medical leave, Plaintiff remained in regular contact with her supervisor, Ms. Jillyne Fraiser ("Fraiser"). She kept Fraiser informed of her medical condition, her recovery, and her intent to return to work as soon as possible. She also provided Fraiser with information regarding certain reasonable accommodations she might require—the need to use crutches due to her leg-related disability, and the need to use a microphone due to her voice-related disability.

11. Prior to and during Plaintiff's extended medical leave, Defendant never indicated that she was in jeopardy of losing her job.

12. On December 8, 2009, Plaintiff informed Defendant that she would return to work before the end of the month, and she reiterated that she would likely need to use crutches and possibly a microphone in the workplace. Then, Plaintiff received medical clearance from her treating physicians to return to full-time work, and she promptly communicated this medical information to Defendant.

13. In the beginning of December 2009, despite knowing that Plaintiff intended to return to work, Defendant assigned most or all of the work-related duties that Plaintiff had performed before she went on medical leave to a non-disabled employee.

14. Near the end of December 2009, Plaintiff reconfirmed to Defendant that she intended to return to work and that she had the necessary medical clearance.

15. Defendant never allowed Plaintiff to return to work. Nor did it engage in any discussions with her about her suggestions for a reasonable accommodation.

16. On December 31, 2009, Defendant verbally informed Plaintiff that her employment was being terminated, and that the termination decision would be effective on January 17, 2010.

17. On January 4, 2010, Defendant (acting through Fraiser) sent an e-mail to Plaintiff and her co-workers stating in relevant part: "due to Elli LeClair's continuing medical issues she will be unable to return to her role as Education and Development Specialist...." It also stated that the non-disabled employee who had taken over Plaintiff's duties would remain in that role until Defendant found a regular, replacement. A copy of this e-mail is attached hereto as **Exhibit 1**.

18. Between December 31, 2009 and January 17, 2010, Defendant engaged in no discussions with Plaintiff about a reasonable accommodation (one that would allow her to return to her former position), and it provided her no assistance in finding alternate employment with Defendant.

19. On January 21, 2011, Defendant again informed Plaintiff that it had decided to terminate her employment because of her disabilities. In a letter to her, Defendant wrote in relevant part: "[Y]our health issues render you unable to perform the essential functions of your position and we are unable to identify sufficient accommodations that can be made without creating and undue hardship for HealthEast. Therefore, we are proceeding with replacing this position."

20. Subsequent to January 21, 2010, Defendant hired a non-disabled employee to takeover the job previously held by Plaintiff.

21. At all times material to this Complaint, Defendant has been a "covered entity" (as defined by the ADA) and an "employer" (as defined the MHRA) continuously employing more than 15 persons.

22. Plaintiff is a person with a "disability" (as defined by the ADA and the MHRA) in two ways: first, her leg-related disability (permanent structural damage that required a partial knee replacement) and her voice-related disability (paralysis of a vocal chord that requires ongoing treatment) are permanent conditions that substantially impair at least one or more "major life activities" (as defined by the ADA), including but not limited to walking and talking; and, second, because she has a history of medical treatment for her leg-related disability and her voice-related disability, Plaintiff has a record of such impairments.

23. Plaintiff is also a "qualified individual" (as defined by the ADA) and a "qualified disabled person" (as defined by the MHRA). Despite her disabilities, she was (and is) able, with or without a reasonable accommodation, to perform all the essential functions required of her former position as an "education and development specialist."

24. Within 300 days of the ADA violations of which she complains, and within 365 days of the MHRA violations of which she complains, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") which was cross-filed with the Minnesota Department of Human Rights ("MDHR"). Plaintiff voluntarily withdrew her charge of discrimination from the EEOC and the MDHR in order to pursue her claims in federal court. Both agencies issued Notices of Right to Sue to Plaintiff, shortly subsequent to September 16, 2011. Therefore, Plaintiff's actions based on the ADA and the MHRA are timely and appropriate.

## COUNT I
## VIOLATION OF THE ADA
## (42 U.S.C. § 12112)

25. Plaintiff re-alleges Paragraphs 1-24 as if fully re-stated herein.

26. Defendant unlawfully and intentionally discriminated against Plaintiff with respect to the terms, conditions, and status of her employment because she is a person with a disability.

27. Defendant terminated Plaintiff's employment because of her disability, even though she was qualified, with or without a reasonable accommodation, to

continue fulfilling all the essential functions of her position as an "education and development specialist."

28. Prior to terminating Plaintiff's employment, Defendant failed to make any efforts to reasonably accommodate her disability, even though more than one reasonable accommodation was available to Defendant and it would have presented no undue hardship.

29. The actions of Defendant against Plaintiff, including but not limited to those described above, constituted discrimination in violation of the ADA.

30. Defendant perpetrated the unlawful discriminatory actions against Plaintiff, including but not limited to those described above, with malice or reckless disregard for her protected rights.

31. As a direct and proximate result of Defendant's unlawful acts of disability discrimination against her, Plaintiff has suffered and continues to suffer economic harm, lost earnings and benefits, embarrassment, damage to reputation, humiliation, garden variety emotional distress, and other compensatory damages in excess of $75,000.00.

## COUNT II
## VIOLATION OF THE MHRA
### (Minn. Stat. § 363A.08, Subd. 2(2))

32. Plaintiff re-alleges Paragraphs 1-31 as if fully re-stated herein.

33. Defendant terminated Plaintiff's employment because of her disability, even though she was qualified, with or without a reasonable accommodation, to continue fulfilling all the essential functions of her position as an "education and development specialist."

34. Defendant's decision to terminate Plaintiff was not based on "a bona fide occupational qualification," as that term is used in the MHRA.

35. The actions of Defendant against Plaintiff, including but not limited to those described above, constituted an unfair discriminatory practice relating to employment in violation of the MHRA (Minn. Stat. § 363A.08, Subd.2(2)).

36. As a direct and proximate result of Defendant's violation of the MHRA, Plaintiff has suffered and continues to suffer economic harm, lost earnings and benefits, embarrassment, damage to reputation, humiliation, garden variety emotional distress, and other compensatory damages in excess of $75,000.00.

## COUNT III
## VIOLATION OF THE MHRA
## (Minn. Stat. § 363A.08, Subd. 6)

37. Plaintiff re-alleges Paragraphs 1-36 as if fully re-stated herein.

38. Prior to terminating Plaintiff's employment, Defendant failed to make a reasonable accommodation to her known disabilities, even though she was a qualified disabled person, more than one such reasonable accommodation was available to Defendant, and it would have presented no undue hardship to accommodate her disability.

39. The actions of Defendant against Plaintiff, including but not limited to those described above, constituted an unfair employment practice in violation of the MHRA (Minn. Stat. § 363A.08, Subd.6).

40. As a direct and proximate result of Defendant's violation of the MHRA, Plaintiff has suffered and continues to suffer economic harm, lost earnings

and benefits, embarrassment, damage to reputation, humiliation, garden variety emotional distress, and other compensatory damages in excess of $75,000.00.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for entry of judgment and order providing:

A.   That the practices of Defendant complained of herein are adjudged, decreed and declared to violate the rights secured to her by the ADA and the MHRA.

B.   That Defendant is mandated to adopt practices in conformity with the requirements of the ADA the MHRA.

C.   That Defendant is permanently enjoined and prohibited from engaging in the practices complained of herein.

D.   That Plaintiff is awarded compensatory damages and other allowable damages in an amount to be established at trial.

E.   That the Court will retain jurisdiction of this matter until such time as the Court is satisfied that Defendant has remedied the practices complained of herein and is in full compliance with the law.

F.   That Defendant pays legal counsel for Plaintiff all their reasonable attorneys' fees and the costs and expenses of this action.

G.   That Plaintiff is awarded such other and further legal and equitable relief as may be found appropriate, just and/or equitable, including punitive damages.

RESPECTFULLY SUBMITTED,

MULLER & MULLER, PLLC

Date: 11-11-11

Andrew P. Muller (No. 32467X)
3109 West 50th Street, No. 362
Minneapolis, MN 55410-2102
(612) 604-5341
apmuller@themullerlawfirm.com

JOHN A. KLASSEN, PA

John A. Klassen (No. 24434X)
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
(612) 204-4533
jaklaw@aol.com

ATTORNEYS FOR PLAINTIFF

⬅ Reply  📧 Reply to all  ➡ Forward   ⤴ ⤵ ✕  ⬆ ⬇   Close   ❔ Help

🔄 You replied on 1/4/2010 4:13 PM.
This message was sent with high importance.

| | | |
|---|---|---|
| From: | Frazier, Jill | Sent: Mon 1/4/2010 2:38 PM |
| To: | Clinical Education | |
| Cc: | | |
| Subject: | Life Support Program - status report | |
| Attachments: | | |

View As Web Page

Hello all,

It is with a great deal of regret that I must inform all of you that due to Elli LeClair's continuing medical issues she will be unable to return to her role as Education and Development Specialist for the Life Support Program.

Over the past three years Elli has done a remarkable job creating and adding value to the training and support of all of our AHA programs as well as many others (TNCC, ENPC, Code Green, etc.) She was instrumental in building usable space at the Midway campus and bringing the training under one roof. This not only provided standardization to the training, but also earned HealthEast 100% accreditation from the American Heart Association as a Community Training Center (CTC). I will deeply miss Elli's commitment to the work she does and the quality of the product she provides.

I will be proceeding in the coming days and weeks to evaluate the position, get it posted and begin the interview and selection process. For the time being, Holly Ringhofer will continue to serve in a temporary role.

Please join me in wishing the very best to Elli as she continues on her healing journey.

Jill


Jillyne (Jill) Frazier RN, MSN

System Director, Nursing Practice and Clinical Education

HealthEast Care System

651-232-4497

jefrazier@healtheast.org

LeClair v. HealthEast Care System
COMPLAINT, EXHIBIT 1